UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       Case No. 18-20111

v.                                         HON. ARTHUR TARNOW

MARK FRANKLIN HOELTZEL,

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant was a juvenile arthritis physician with a sexual interest in minor girls. A doctor by day, Defendant treated girls suffering from rheumatoid arthritis. When he was not in the office, he pretended to be a teenage boy so that he could engage in online conversations with minor girls the same age as many of his patients. These girls were all over the country: Colorado, Ohio, Missouri, Washington, Kentucky and Virginia. Defendant perfected his fake persona; he knew exactly what to say to girls to get them to talk to him. He sent several of the girls pictures and videos of his penis. He also requested that a 14 year-old produce child pornography for him. And he collected child pornography that he downloaded from the internet.

Defendant's sentencing guideline range is 168 to 210 months. The government respectfully recommends that the Court sentence Defendant to 180 months' imprisonment.

## *Statement of Facts*

On December 12, 2017, the University of Michigan Police Department (UMPD) executed a search warrant at Defendant's residence in Ann Arbor. (PSR ¶ 18.) The search warrant was based on information that Defendant, a physician working at a children's hospital in Ann Arbor, had been having a sexual relationship with a vulnerable patient, and that he had provided her with narcotic pain medication in exchange for sex acts. (PSR ¶ 14-16.) During the search, electronic evidence was seized from Defendant's home. Forensic review of Defendant's electronic devices located more than 200 images of child pornography, depicting minor girls in various stages of undress, lasciviously displaying their genitals, and engaging in sex acts. (PSR ¶ 18.)

Investigators obtained records from Verizon Wireless for Defendant's cell phone. The records included text messages from October to December 2017. In these messages, investigators found that Defendant had been communicating with three minor girls (MV-1, MV-2

and MV-3). These children all communicated with Defendant believing that he was Ryan Gardner. The conversations were sexual. MV-1, MV-2 and MV-3 spoke with child forensic interviewers. These victims did not exchange pictures or videos with Defendant.

Investigators also identified a Facebook account for "Ryan Gardner" that Defendant used to meet and communicate with minor girls, and submitted a search warrant for records from this account. On March 6, 2018, Facebook provided records responsive to the search warrant. In total, Facebook's response included 19,308 pages of records for this fictitious account. The records indicated that Defendant opened the account on January 16, 2017, and that he pretended to be a teenage boy. During the year that the account was active, Defendant communicated with 930 other users, the vast majority of them appearing to be minor girls.

In order to review this voluminous material, HSI Special Agent Michael MacBride focused on communications where Defendant and the other users exchanged video or image files. From there, Agent MacBride identified numerous minor girls that had sent files to or received files from Defendant. Agent MacBride identified the following minors:

- Minor Victim Four, a 14 year-old girl in Ohio;

- Minor Victim Five, a 14 year-old girl in Colorado;

- Minor Victim Six, an 11 year-old girl in Colorado;

- Minor Victim Seven, a 15 year-old girl in Washington;

- Minor Victim Eight, a 15 year-old girl in Kentucky;

- Minor Victim Nine, a 15 year-old girl in Virginia.

Review of Defendant's Facebook conversations with these minor girls reveals a pattern. Defendant initiates the conversations, usually by complementing the girl on her appearance. To MV-6, an 11 year-old, Defendant simply wrote: "Wow." When MV-6 asked him "what do u mean wow?," Defendant responded: "That pic," and then told MV-6 she was "stunning." To MV-8, Defendant wrote, "Wow," and then, "that pic. You. Stunningly beautiful."

Next, Defendant asked the girls how old they were, and usually told them that he was 17 years old or 2 years old than they were. Defendant asked the victims where they lived, and told them either that he lived nearby, or that he was planning to move to their state. When MV-5 told Defendant that she lived in Colorado, Defendant said that he lived in "ohio. . . but moving to colorado soon." When MV-5 told Defendant the

4

name of her town, he responded: "LOL," "that's one of the places we are looking at." For MV-6, another victim in Colorado, Defendant gave the same story, writing: "ohio right now, but moving there in August." When MV-6 confirmed that Defendant meant that he was moving to her town, he said: "yup," and "sorry if I freaked you out." MV-7 told Defendant the name of the city where she lived in Washington state, and Defendant responded: "I'm moving there in august." MV-8 told Defendant that she lived in Kentucky, and Defendant responded: "I from Cincinnati just moved to lexington ky."

Defendant asked the victims for pictures, and they generally sent him selfies. He complimented them on their appearance, and asked for more pictures. Defendant responded to a picture of MV-8 by telling her: "god, you are so beautiful."

Eventually, Defendant turned the conversations in a sexual direction, often asking the victims if they were virgins. To MV-4, Defendant asked: "are you a virgin?," "can I ask more sex questions?," "ever had an orgasm?," "what have you done before?," and "don't even touch yourself?" Defendant then encouraged MV-4 to masturbate, saying: "I'm not really compatible with girls who don't at least touch themselves."

5

MV-4 told Defendant she didn't touch herself because she'd been raped at age 12.  Defendant also told the victims what he wanted to do to them sexually. To MV-7, Defendant wrote: "I'll gently hold you against the wall," "kissing down your neck and chest," "I turn and throw you on your back on the bed," "your legs fall open and I jump between them. . .", "my warm hands sliding all over your tingling bare skin. . .," "my lips trail down your chest, between your boobs", etc.

Defendant sent pictures of his penis and/or videos of his penis as he masturbated to MV-4, MV-5, and MV-6. Defendant directed MV-5 to take photographs of her vagina, asking her to "spread it open." MV-5 complied with Defendant's request, and sent him the photographs that he requested. MV-7 also sent Defendant explicit photographs, and he repeatedly asked her to send him more pictures of herself without clothes. MV-4 sent Defendant a photograph of her vagina.

The minor victims were interviewed by child forensic interview specialists. MV-5 said that she had communicated with someone she knew as Ryan Gardner, and she believed that he was a 17 year-old boy. She thought that he was her boyfriend, and she told him that she loved him. He told her that he loved her too. Other victims said similar things:

6

that they believed Defendant was a teenage boy, and that they thought they were romantically involved with him.

## *Procedural History*

The grand jury returned a seven-count indictment charging Defendant with receipt and possession of child pornography, transfer of obscene material to a minor, online enticement, and production of child pornography. On September 13, 2018, Defendant entered a guilty plea to online enticement of MV-5 (Count Four). In the Rule 11 Plea Agreement, the parties calculated the Defendant's sentencing guideline range to be 168 to 210 months. (R. 30, PgID 96.) The Probation Department has calculated the same range. (PSR ¶ 21, 22.)

## SENTENCING GUIDELINES CALCULATION AND RELEVANT 3553(a)a FACTORS

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally

available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors to Defendant's case are evaluated below.

### *The Sentencing Guidelines Range*

Although advisory, the Sentencing Guidelines remain an important factor under Section 3553(a) when determining an appropriate sentence. As the Supreme Court noted in *United States v. Rita*, 551 U.S. 338, 345 (2007), "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." The parties and the Probation Department calculated Defendant's guideline range to be 168 to 210 months. This is the appropriate starting place when fashioning a sentence for Defendant.

### *Nature and Circumstances of the Offense*

Defendant committed numerous crimes: production of child pornography, online enticement of a minor, receipt of child pornography, possession of child pornography, and transfer of obscene material to

minors. Most of these crimes carry significant mandatory minimum penalties. On their face, these are extremely serious crimes.

In addition, Defendant communicated with dozens, if not hundreds, of minor girls. Although he appears to have only exchanged files with a handful, Defendant fraudulently convinced countless teenage girls that he was a teenage boy. His conversations with these girls were flirtatious, romantic, and often sexual. At least one victim was 11 years old, and many told him they were in middle school.

The number of Defendant's victims, and the age of his victims weigh in favor of a substantial custodial sentence beyond the mandatory minimum of 10 years required by statute. A sentence of 180 months would adequately reflect the nature and circumstances of Defendant's offense.

### *History and Characteristics of the Offender*

Defendant was a physician, and he specialized in treating children with rheumatoid arthritis. Defendant's sexual interest in children was not limited to his online activities; in addition to the conduct that brings him before this Court, Defendant also used his position as a physician to engage in inappropriate relationships with female patients.

In 2004, an eleven year-old girl met Defendant at a summer camp for children with juvenile arthritis. Defendant was a doctor at the camp, and the eleven year-old was a camper. Once the girl returned home from the camp, she communicated with Defendant online using yahoo messenger and email. For approximately two years, Defendant talked to this child. He told her that she had "pretty long legs," had "pretty eyes," that she was a "future model," and would ask her if he was making her "blush." Defendant asked the girl if he could take her out for ice cream, but the girl's mother said no. Eventually, the girl's mother found the inappropriate messages and contacted the police. Defendant admitted that his behavior was "flirtatious," "unprofessional," and "bad judgment." No criminal charges were brought, and Defendant was referred to a professional boundaries course.

In 2015, Defendant used his position as a physician to engage in an inappropriate relationship with a patient (Adult Victim One, or V-1). Defendant first met V-1 when she was 17 years old. After she turned 18, he directed her to make an appointment with him at his clinic. (PSR ¶ 13.) V-1 suffered from painful arthritis and mental health issues. At her first visit to see Defendant at his clinic, Defendant told V-1 to bend over

and touch her goes. As she did, Defendant pulled her buttocks against his groin and rubbed his erect penis on her. (PSR ¶ 16.) For the next several years, V-1 saw Defendant at his clinic, and Defendant repeatedly engaged in a sex acts with her in his examination rooms. (PSR ¶ 16.) Defendant also saw V-1 outside of the office. As a doctor, he understood that she was medically vulnerable, and he exploited her vulnerabilities by overprescribing medications and supplying her with alcohol. Defendant also told V-1 that he was attracted the pre-teen and teenage patients in his clinic, and described how he liked seeing them wear leggings. He asked V-1 to put her hair in pigtails and act like a young girl. Defendant is currently facing charges in Washtenaw County related to V-1. (PSR ¶ 87.) The government has no objection to Defendant's sentence in this case running concurrent to any sentence imposed in Washtenaw County.

Finally, Defendant also engaged in an inappropriate sexual relationship with an 18 year-old girl. (Exhibit A, Witness Statement, *submitted under seal*). Defendant's history of exploiting vulnerable teenagers is lengthy, and occurred in real life and online.

11

### *Seriousness of the Offense, Promoting Respect for Law, and Providing Just Punishment*

Defendant's crimes are serious. Defendant inflicted emotional harm upon pre-teen and teenage girls. He did this repeatedly. A sentence within the guideline range will reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

### *Deterrence*

The above considerations impact another § 3553(a) factor – the need to deter such conduct in the future. Sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006). A significant sentence is necessary so that Defendant and others will understand the consequences of child exploitation and pornography offenses, and deter him and others from engaging in this conduct in the future.

The Sixth Circuit has explained that deterrence is particularly important when dealing with child pornography cases. This is because most child pornography crimes occur in private, making them easy to

commit and very difficult to detect. Under such circumstances, deterrence is important to combat the normalization that occurs when offenders "may think that because they are on the Internet in their home that they are doing something that is innocent." *United States v. Kirchholf,* 505 F.3d 409, 415 (6th Cir. 2007). Moreover, as the Sixth Circuit explained, "general deterrence is crucial in the child pornography context." *Robinson,* 669 F.3d at 777.

### *Avoiding unwarranted sentence disparities*

A significant sentence is necessary to avoid unwarranted sentencing disparities. A sentence of 15 years is consistent with sentences awarded to similar defendants that engaged in similar conduct.

## CONCLUSION

For the reasons stated above, a 180-month sentence is the appropriate sentence for Defendant.

                                              Respectfully submitted,

                                              MATTHEW SCHNEIDER
                                              UNITED STATES ATTORNEY

                                              */s Sara D. Woodward*
                                              SARA D. WOODWARD
                                              Assistant United States Attorney
                                              211 W. Fort Street, Suite 2001
                                              Detroit, MI  48226
                                              Phone: 313-226-9180
                                              E-Mail: sara.woodward@usdoj.gov

December 8, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Ray Cassar, counsel of record.

        /s Sara D. Woodward
        SARA D. WOODWARD
        Assistant United States Attorney
        211 West Fort Street, Suite 2001
        Detroit, Michigan 48226-3211
        (313) 226-9810
        sara.woodward@usdoj.gov

December 8, 2018