UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARK FRANKLIN HOELTZEL,

    Defendant.

_____/

Criminal Case No. 18-20111

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**OPINION AND ORDER DENYING MARK FRANKLIN HOELTZEL'S MOTION FOR REDUCTION IN SENTENCE [75]**

On September 13, 2018, Mark Franklin Hoeltzel pleaded guilty to one count of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). (ECF No. 30). On December 13, 2018, the Court sentenced Hoeltzel to a mandatory minimum of ten years imprisonment. (ECF No. 42, PageID.228). Shortly thereafter, the Washtenaw County Circuit Court sentenced Hoeltzel to five to fifteen years imprisonment in a related matter following a plea of no contest to two counts of criminal sexual conduct. (ECF No. 79, PageID.779).

On December 13, 2019, Hoeltzel moved to vacate his federal sentence pursuant to 28 U.S.C. § 2255. (ECF No. 43). The Court appointed counsel to represent Hoeltzel in his Motion [43] on September 17, 2020. (ECF No. 70). On November 24, 2020, Hoeltzel filed a *pro se* Motion for Reduction in Sentence

pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 75). On December 7, 2020, the Court extended its prior Appointment Order [70] to Hoeltzel's Motion for Reduction in Sentence [75] and ordered supplemental briefing. (ECF No. 76). A video hearing was held on Hoeltzel's Motion [75] on December 23, 2020. Hoeltzel withdrew his Motion to Vacate [43] on January 7, 2021. (ECF No. 86). For the reasons outlined below, Hoeltzel's Motion for Reduction in Sentence [75] will be **DENIED**.

## BACKGROUND

Hoeltzel was born in Battle Creek, Michigan in 1971 with a heart defect that left him "small and physically limited." (PSR ¶¶ 30, 84). According to Hoeltzel, "[t]his didn't go [over] well in a family with an all-state football dad, and popular athletic big brother." (*Id.* ¶ 30). He ultimately underwent surgery to repair the heart defect, however, this family dynamic and his parents' emotional unavailability left him with "significant physical and emotional scars." (*Id.*). He sees this as the root of the sexual addiction that precipitated the instant offenses. (*Id.*).

Hoeltzel graduated from medical school in 2001 and was working as a physician and clinical professor for University of Michigan ("U.M.") at the time of the instant conduct. (*Id.* ¶¶ 95-96). His specialty was pediatric rheumatology, though his medical licenses have now all either expired or been revoked. (*Id.* ¶ 97). Hoeltzel recognizes that he will never be able to return to medicine but hopes to pivot to a career working with sex offenders and others with sexual addiction. (*Id.* ¶ 102). This

stated desire to help others accords with Hoeltzel's extensive history of volunteer work, which the Court cited as a reason for its below-guidelines sentence. (*Id.* ¶ 88; SOR).

Hoeltzel was arrested on February 12, 2018 following a two-month investigation. (PSR ¶¶ 13, 20). In December 2017, the U.M. Police Department learned that Hoeltzel had engaged in an inappropriate relationship with a patient whom he had first met when she was seventeen. (*Id.* ¶ 13). Law enforcement later executed a search warrant at Hoeltzel's home where they discovered images of child pornography on his computer. (*Id.* ¶ 14). Subsequent investigation of Hoeltzel's cellular and Facebook records revealed that he had been using a fake persona to exchange sexual messages, pictures, and videos with several minor girls from various states. (*Id.* ¶¶ 15-19).

Several months after Hoeltzel was arrested, his wife, with whom he has three young children, divorced him. (*Id.* ¶ 87). Because of his cooperation with prosecutors, Hoeltzel was given permission to attend an inpatient sex addiction program prior to sentencing. (*Id.* ¶ 90).

Hoeltzel is currently forty-nine years old, incarcerated at FCI Milan, and scheduled for release on July 28, 2027. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register Number 56366-039) (last visited Feb. 1, 2020).

## ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the compassionate release statue, provides, in relevant part:

> **(A)** [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> **(i)** extraordinary and compelling reasons warrant such a reduction.
> [. . .]
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).

A. <u>Exhaustion</u>

Before a petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1), they must either exhaust their administrative remedies with the BOP or wait thirty days from when they filed a request with their warden. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Hoeltzel submitted a request to his warden on October 16, 2020. (ECF No. 75, PageID.732). His request was denied on November 4, 2020. (*Id.* at 735). The Government concedes that Hoeltzel has

exhausted. (ECF No. 81, PageID.832). Accordingly, the Court must now proceed through a three-step inquiry:

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." [*Dillon v. United States*, 560 U.S. 817, 827 (2010).]

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (first four alterations in original) (footnotes omitted).

### B. Extraordinary and Compelling Reasons for Release

"[D]istrict courts have full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at *7. Hoeltzel argues that his weight, high cholesterol, and history of congenital heart disease (congenital pulmonary stenosis), which required surgery when he was a child and allegedly led to decreased lung capacity, put him at heightened risk of severe illness. The Court finds that although the risk posed to Hoeltzel from these medical conditions and the spread of COVID-19 would, under normal circumstances, constitute extraordinary and compelling reasons for release, Hoeltzel fails to demonstrate how a transfer to

State custody would decrease his risk. Accordingly, the Court does not find that there are extraordinary and compelling reasons for release.

Hoeltzel's height and weight put him in the category of "overweight," which, according to the CDC, "might increase [his] risk of severe illness from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/E3G6-2J72] (last updated Dec. 29, 2020). He also has mild hyperlipidemia (high cholesterol), which the CDC does not list as a risk factor. *See id.*

Hoeltzel's heart condition may also put him at risk. Hoeltzel had a surgical valvotomy—"an incision in the pulmonary valve to make the opening to the pulmonary artery larger," which "helps the blood flow more easily into the pulmonary artery"—when he was four years old. *Congenital Pulmonary Stenosis Surgery*, JOHNS HOPKINS MED., https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/congenital-pulmonary-stenosis-surgery [https://perma.cc/Z4GB-P6QT] (last visited Feb. 1, 2021). He requires a follow-up appointment every five years. (ECF No. 84, PageID.991). Though the CDC says that children with congenital heart disease may be at increased risk of severe illness, it says nothing about adults whose congenital defects have been repaired with surgery. Its only potentially relevant statement is that "[h]aving other cardiovascular or

cerebrovascular disease," labels for which Hoeltzel's condition may or may not qualify, "might increase [the] risk of severe illness from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION. Lastly, although Hoeltzel alleges that his condition has left him with diminished lung capacity, this is not reflected anywhere in his medical records.

Ultimately, even though there is some evidence that Hoeltzel's conditions put him at serious risk, he fails to demonstrate extraordinary and compelling reasons for a more basic reason. Hoeltzel has a detainer from the Michigan Department of Corrections. If granted compassionate release, he would immediately be transferred to state prison for multiple years. And because the COVID-19 situation is far worse in Michigan state prisons than at FCI Milan, compassionate release would actually put Hoeltzel in *greater* danger. *See A State-by-State Look at Coronavirus in Prisons*, MARSHALL PROJECT, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons [https://perma.cc/9EAX-G6DA] (last updated Jan. 29, 2021) (listing 47,183 cases in the *entire* federal system versus 24,120 cases *in Michigan alone*); *see also COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/3JPE-3MLM] (last updated Feb. 1, 2021) (listing thirteen positive cases at FCI Milan). Accordingly, Hoeltzel fails to demonstrate extraordinary and compelling reasons for release.

C. Section 3553(a) Factors

The last step that district courts contemplating a motion for compassionate release take is to consider the applicable sentencing factors listed in 18 U.S.C. § 3553(a). There is no need to engage in the 3553(a) analysis, however, where extraordinary and compelling circumstances are not present. *See v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Accordingly, the Court declines to consider the § 3553(a) factors and determines that a sentence reduction is not appropriate.

## CONCLUSION

**IT IS ORDERED** that Hoeltzel's Motion for Reduction in Sentence [75] is **DENIED**.

**SO ORDERED**.

Dated: February 3, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge