UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                         CRIMINAL NO.  18-20111

v.                                      Hon. Terrence G. Berg

MARK FRANKLIN HOELTZEL,

       Defendant.

---

**United States' Response to Defendant's Second Motion for Relief under 18 U.S.C. § 3582 (ECF No. 88)**

---

In December 2020, Judge Tarnow denied Mark Hoeltzel's motion for compassionate release. (ECF No. 87.) On May 13, 2022, Hoeltzel filed a second motion seeking release under 18 U.S.C. § 3582. (ECF No. 88.)  In his new motion, Hoeltzel points to several issues that do not qualify as "extraordinary and compelling," including the "harsh" nature of confinement during Covid, the medical care at Milan, and the impact that his state sentence has on his rehabilitation opportunities in prison. Because Hoeltzel is fully vaccinated and boosted and does not have any

medical issues that place him at high risk for complications from Covid-19 infection, his motion must be denied. In addition, the sentencing factors in 18 U.S.C. § 3553(a) continue to weigh strongly in favor of his original 10 year-sentence.

## Background Information

In December 2017, police executed a search warrant at Hoeltzel's residence in Ann Arbor. (PSR ¶ 14.) The search warrant was based on information that Hoeltzel, a medical doctor working at a children's hospital, had been having a sexual relationship with a vulnerable patient, and that he had provided her with narcotic pain medication in exchange for sex acts. (PSR ¶ 13.) Forensic review of Hoeltzel's electronic devices recovered more than 200 images of child pornography depicting minor girls in various stages of undress, lasciviously displaying their genitals, and engaging in sex acts. (PSR ¶ 14.)

Investigators also obtained Hoelztel's phone records and discovered text messages between Hoeltzel and three minor girls (MV-1, MV-2 and MV-3). These children all communicated with Hoeltzel believing that he was a teenager named Ryan Gardner. The conversations were sexual. (PSR ¶ 15.)

Next, investigators located a Facebook account for "Ryan Gardner" that Hoeltzel used to find and communicate with teenage girls all over the country. (PSR ¶ 16.) This account contained 19,308 pages of fictitious communications between Hoeltzel, posing as teenaged-Ryan Gardner, and minor girls. During the year that the account was active, Hoeltzel communicated with 930 other users, the vast majority of them appearing to be minor girls.

Review of Hoeltzel's fake Facebook account identified a number of minor victims that exchanged video or image files with Hoeltzel:

- Minor Victim Four, a 14 year-old girl in Ohio;
- Minor Victim Five, a 14 year-old girl in Colorado;
- Minor Victim Six, an 11 year-old girl in Colorado;
- Minor Victim Seven, a 15 year-old girl in Washington;
- Minor Victim Eight, a 15 year-old girl in Kentucky;
- Minor Victim Nine, a 15 year-old girl in Virginia.

In Hoeltzel's messages with his victims, he initiated the conversations, usually by complementing the girl on her appearance. To MV-6, an 11 year-old, Hoeltzel simply wrote: "Wow." When MV-6 asked him "what do u mean wow?," Hoeltzel responded: "That pic," and then

told MV-6 she was "stunning." To MV-8, Hoeltzel wrote, "Wow," and then, "that pic. You. Stunningly beautiful."

Next, Hoeltzel asked the girls how old they were, and usually told them that he was 17 years old or 2 years older than they were. Hoeltzel asked the victims where they lived, and told them either that he lived nearby, or that he was planning to move to their state. When MV-5 told Hoeltzel that she lived in Colorado, Hoeltzel said that he lived in "ohio. . . but moving to colorado soon." When MV-5 told Hoeltzel the name of her town, he responded: "LOL," "that's one of the places we are looking at [to move]." For MV-6, another victim in Colorado, Hoeltzel gave the same story, writing: "ohio right now, but moving there in August." When MV-6 confirmed that Hoeltzel meant that he was moving to her town, he said: "yup," and "sorry if I freaked you out." MV-7 told Hoeltzel the name of the city where she lived in Washington, and Defendant responded: "I'm moving there in august." MV-8 told Hoeltzel that she lived in Kentucky, and he responded: "I from Cincinnati just moved to lexington ky."

Eventually, Hoeltzel turned the conversations in a sexual direction, often asking the victims if they were virgins. To MV-4,

Hoeltzel asked: "are you a virgin?," "can I ask more sex questions?," "ever had an orgasm?," "what have you done before?," and "don't even touch yourself?" Hoeltzel then encouraged MV-4 to masturbate, saying: "I'm not really compatible with girls who don't at least touch themselves." (PSR ¶ 16.) MV-4 told Hoeltzel she didn't touch herself because she'd been raped at age 12. Hoeltzel also told the victims what he wanted to do to them sexually. To MV-5, Hoeltzel said: "Just never thought an 8th grader could be so . . . sexy." (PSR ¶ 17.) Hoeltzel also wrote to MV-5: "You pull me into you again. . . feeling the hard bulge of my c*ck through my jeans and your leggings putting pressure on your throbbing p*ssy." (PSR ¶ 17.)

     Hoeltzel sent pictures of his penis and/or videos of his penis as he masturbated to MV-4, MV-5, and MV-6. (PSR ¶ 16, 18.) Hoeltzel directed MV-5 to take photographs of her vagina, asking her to "spread it open." (Ex. C, HOELTZEL_1226.) MV-5 complied with Defendant's request and sent him the photographs that he requested. (PSR ¶ 18.) MV-7 also sent Hoeltzel explicit photographs, and he repeatedly asked her to send him more pictures of herself without clothes. (PSR ¶ 19.) MV-4 sent Hoeltzel a photograph of her vagina. (PSR ¶ 16.)

Hoeltzel was charged in a seven-count indictment with receipt and possession of child pornography, transfer of obscene material to a minor, online enticement, and production of child pornography. Hoeltzel entered a guilty plea to online enticement of MV-5. His advisory sentencing guideline range was 168 to 210 months (PSR ¶ 106); the Court imposed a 120 month sentence.

In his motion for compassionate release, Hoeltzel first asserts that the Covid-19 pandemic has resulted in "more punitive conditions of incarceration" and has made it difficult for him to "perform necessary self-care in a prison environment." (ECF No. 88, PageID 1068.) As a former medical doctor, he also questions the quality of care that he is receiving at Milan. (*Id.*) Next, Hoeltzel claims that his state sentence disqualifies him from early release, alcohol abuse treatment, and halfway house treatment. (*Id.*) Finally, Hoeltzel asserts that physical assaults from other inmates require his release. (*Id.*)

## Argument

**II. The Court should deny Hoeltzel's motion for compassionate release.**

A district court's authority to modify a sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th

Cir. 2008). Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Compassionate release is one narrow avenue for a sentence reduction, but it requires a defendant to: (1) administratively exhaust his claim; (2) show that "extraordinary and compelling circumstances merit a sentence reduction"; and (3) that "the applicable § 3553(a) factors warrant such a reduction." *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021); 18 U.S.C. § 3582(c)(1)(A). A district court may deny compassionate release when the defendant has failed to satisfy either of the last two requirements. *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021).

According to BOP records, Hoeltzel submitted a second request for compassionate release to the Warden on September 6, 2021. (Exhibit A, Hoeltzel Request.) In his request to the Warden, Hoeltzel raised many of the same issues presented in his second compassionate release motion. Thus, it appears that Hoeltzel has properly exhausted his claim.

### A. Hoeltzel's vaccination against Covid-19 prevents him from establishing extraordinary and compelling reasons.

"[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). The logic is straightforward: "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *Id.* Other circuits agree. *E.g.*, *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order.").

Hoeltzel received doses of the Moderna Covid-19 vaccine on April 9 and May 6, 2021. (Exhibit B, *submitted under seal*, HOELTZEL BOP 0071.) He received a booster shot on March 8, 2022. (*Id.*, HOELTZEL BOP 140.) Hoeltzel is fully inoculated against Covid-19.

In his motion, Hoeltzel asserts that the pandemic has resulted in "harsh conditions" of confinement. He points to a lack of rehabilitation

opportunities and restrictions on movement at Milan. But this is not unique to Hoeltzel and applies equally to all federal inmates. Nothing in Hoeltzel's second motion for compassionate release is "extraordinary or compelling," and his motion must be denied. Instead, Hoeltzel identifies generalized concerns about incarceration during a pandemic. This is insufficient for compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")

### B. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

But even if Hoeltzel could establish extraordinary and compelling reasons for early release, the § 3553(a) factors did not support release his 2020, and they do not support it now.  Nothing has changed in the last year to shift the analysis in his favor. A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States*

*v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same). So even if the Court were to find that Hoeltzel established extraordinary and compelling reasons for his release, the § 3553(a) factors still disqualify him.

First, Hoeltzel's significant remaining sentence weighs against release. His earliest release date is July 28, 2027, and although he has finally placed himself on the waiting list for sex offender treatment (after initially refusing), he has not yet completed the program yet.[1] The Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence. *Ruffin*, 978 F.3d at 1008; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under §

---

[1] The BOP's voluntary sex offender treatment program (SOTP) is provided to inmates at the end of their sentences in order to accommodate all inmates who wish to participate and to prioritize inmates that are being released into the community.

3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008. Here, Hoeltzel has five years remaining on his federal sentence, even when taking into consideration the calculation of credit for good-time.

Second, Hoeltzel's history and characteristics and the nature and circumstances of his offense continue to weigh against his release. Hoeltzel used his position as a medical doctor to sexually assault a patient. He also pretended to be a teenage boy so that he could communicate with and exploit minor girls across the country. By day, Hoeltzel treated children's arthritis. By night, he committed extremely serious crimes against at least nine children. He communicated with dozens, if not hundreds, of minors that were the same age as his patients. Hoeltzel pretended to be a teenage boy and exchanged explicit photographs and videos with at least three minors.

Third, Hoeltzel's original sentence continues to reflect the seriousness of his offenses, promote respect for the law, and provide just punishment. Hoeltzel committed very serious child exploitation crimes against numerous minors. To date, he has served approximately 3.5 years of his sentence. Hoeltzel should complete his sentence for general

deterrence and specific deterrence purposes, and to protect the public from future crimes of the defendant.

## Conclusion

Hoeltzel's second motion for compassionate release should be denied.

>Respectfully submitted,
>
>DAWN N. ISON,
>United States Attorney
>
>s/Sara D. Woodward
>Assistant United States Attorney
>211 W. Fort Street, Suite 2001
>Detroit, MI 48226
>Phone: (313) 226-9180
>sara.woodward@usdoj.gov

Dated: July 18, 2022

## Certificate of Service

I hereby certify that on July 18, 2022, a copy of the foregoing document was sent to Defendant Mark Hoeltzel, Register Number 56366-039, FCI Milan, Federal Correctional Institution, P.O. Box 1000, Milan, MI 48160.

/s/ Sara D. Woodward
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9180
sara.woodward@usdoj.gov
------
------