UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MARK FRANKLIN HOELTZEL,

    Petitioner-Defendant,

v.

    Case No. 18-cr-20111

    Judge Terrence G. Berg

UNITED STATES OF AMERICA,

    Respondent-Plaintiff.

_____/

## DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE

FILED
SEP 26 2022
CLERK'S OFFICE
DETROIT

    In their Response, the government <u>does not oppose my request for a modest sentence reduction of 12 months</u>. The government only argues in opposition to immediate "compassionate release," which I have not requested and recognize that I do not deserve. Overall, the government's response is off-target, dedicating pages to oppose a claim I did not assert while failing to address the claims I have submitted in any kind of substantive fashion. In short, the government's Response should not be well taken, and my motion for sentence reduction should be granted based on the combination of claims I put forth.

### I. THE TOTALITY OF CIRCUMSTANCES IS EXTRAORDINARY AND COMPELLING

    Before addressing each claim, I want to clarify precisely what I am asking of this Honorable Court. I respectfully ask that the Court consider whether a combination of the circumstances that I have presented reach the "extraordinary and compelling" standard warranting a reduction in sentence short of time-served. The Sixth Circuit has held that this "combination" or "complex of circumstances" method of analysis is proper when analyzing prisoner-initiated reduction in sentence

motions. See United States v. McCall, 30 F.4th 1108 (6th Cir. 2021) ("[T]he court could have considered [Defendant]'s three factors 'in combination' to see if they formed an extraordinary and compelling reason for compassionate release") (citing/ quoting United States v. Owens, 996 F.3d 755, 764 (6th Cir. 2021)). More recently, the Supreme Court endorsed this "combination" approach in Concepcion v. United States, 597 U.S. ___ (June 27, 2022) (ruling that nonretroactive sentencing changes can be considered in combination with other factors to determine if sentence reduction is warranted).

A recent panel decision from the First Circuit in United States v. Trenkler, No. 21-1441 (1st Cir. Aug. 29, 2022) perhaps stated it best:

> United States v. Ruvalcaba, 26 F.4th 14, 19 (1st Cir. 2022) convincingly set the standard for a district court reviewing a prisoner's proposed reasons for compassionate release, making it clear that district courts have the discretion to review prisoner-initiated motions by taking the holistic, any-complex-of-circumstances approach... [I]t is possible that the whole may be greater than the sum of its parts, and reasons that might not do the trick on their own may combine to constitute circumstances that warrant a finding that the reasons proposed are, in the aggregate, extraordinary and compelling... [D]istrict courts should be mindful of the holistic context of a defendant's individual case when deciding whether the defendant's circumstances satisfy the "extraordinary and compelling" standard-- "any complex of circumstances" contemplates that any number of reasons may suffice on a case-by-case basis, whether it's one, two, or ten.

Even if this Court does not find that any of my claims are individually "extraordinary and compelling," I submit that the combination of factors that I have presented reaches the extraordinary and compelling standard in aggregate.

## II. THE EXHAUSTION REQUIREMENT HAS BEEN SATISFIED

As a threshold matter, the government concedes that "Hoeltzel has properly exhausted his claim." Doc. 91, PageID.1198.

### III. A SENTENCE REDUCTION SHORT OF TIME-SERVED IS NOT OPPOSED BY THE GOVERNMENT

After carefully reading the government's Response, I humbly submit that the government does <u>not</u>, in fact, oppose my requested relief of a sentence reduction of 12-months. No where in my original motion do I request or even imply that I am requesting immediate or "compassionate" release. In fact, I clearly state:

> Moreover, Mr. Hoeltzel is not requesting compassionate release. Indeed he is requesting that this Court reduce his sentence by 12-36 months. (Doc. 88, pg. 3)

Upon further reflection, I have since narrowed my request to a 12-month reduction, although will certainly accept any reduction that this Court deems appropriate.

To be sure, "The First Step Act does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court the discretion in its evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons.'" <u>United States v. Wright</u>, 2022 U.S. Dist. LEXIS 104747, at *48-49 (D. Md. June 10, 2022) (granting a partial sentence reduction short of time-served).

Because the government does not address the specific relief that I requested, the only logical conclusion is that the government does not oppose a modest reduction in sentence short of time-served, such as 12-months.

### IV. THE GOVERNMENT FAILS TO SUBSTANTIVELY OPPOSE ANY OF THE SUBMITTED CLAIMS

The government uses the preponderance of their Response to argue that my health risk from COVID-19 is not an extraordinary and compelling reason for compassionate release, which is an argument that I did not assert. The government failed to respond at all to the majority of claims submitted, and what response they offer is only conclusory and falls short.

-3-

## 1. Conditions of confinement during the pandemic are far more punitive than the sentencing Court anticipated

In my motion, I assert that confinement during the pandemic has significantly increased the punitive nature of my sentence in several particular ways, including (1) the effects of repeated and prolonged lockdowns, (2) the fear and anxiety of having a high risk health condition while incarcerated during the pandemic, (3) the lack of rehabilitation opportunities, and (4) the inability to perform self-care.

The government attempts to dismiss this argument with four conclusory sentences and a misapplied quote from another circuit:

> But this is not unique to Hoeltzel and applies equally to all federal inmates. Nothing in Hoeltzel's second motion for compassionate release is "extraordinary or compelling," and his motion should be denied. Instead, Hoeltzel identifies generalized concerns about incarceration during a pandemic. This is insufficient for compassionate release.
> (Doc. 91, PageID.1200)

First, I have not requested "compassionate release," as discussed above.

Second, I identified particular concerns and how I have been uniquely affected by incarceration during the pandemic, not "generalized concerns."

Third, United States v. Raia is not applicable, and is frequently misapplied in response to these motions. Besides that fact that Raia was vacated, the only true holding in Raia was that a defendant must exhaust his administrative remedies before the court has jurisdiction. It is not even clear that the oft-used "mere existence of COVID-19 in society" quote is even dicta. Regardless, it does not apply here because the defendant in Raia asked for compassionate release only based on the existence of the pandemic. He did not cite any particular health risks or articulate how the existence of the pandemic inidividually affected him. He made no other claims that could have been used in an analysis for "extraordinary and compelling reasons." Therefore Raia cannot be applied when a defendant identifies

particular and individualized effects on being incarcerated during the pandemic, as was submitted in my original motion.

Fourth, the increased punitive nature of incarceration during the pandemic does not "appl[y] equally to all federal inmates," as claimed by the government. Certainly, federal inmates incarcerated before the pandemic or since pandemmic restrictions have been relaxed have been less affected. In terms of inmates incarcerated during the pandemic; (1) those like me with high risk health conditions experienced greater levels of fear and anxiety during the pandemic, (2) those like me with young children with whom they could no longer visit, hug, or regularly communicate experienced greater social isolation and depression, and (3) those like me who did experience health complications from contracting COVID-19 also experienced increased anxiety, as well as the physical effects themselves.

If the increased harshness of incarceration did "appl[y] equally to all federal inmates," then courts, including this one, would not use this as a reason for sentence reduction, a trend that continues unabated. See, e.g., United States v. Lora, 2022 U.S. Dist. LEXIS 65734, at *13-14 (S.D.N.Y. Apr. 8, 2022). After determining that the defendant's health conditions were not extraordinary and compelling, the Lora court determined that the increased punitive nature of incarceration during the pandemic alone was enough to warrant a 10-month sentence reduction, opining:

> [Defendant] offers an additional basis for compassionate release that has more traction, namely, that the conditions of confinement during the COVID-19 pandemic have resulted in a sentence that was more severe than the Court contemplated when it originally sentenced him in March 2020. The Court acknowledges that it did not foresee the restrictions that would be precipitated by the pandemic (including lockdowns and curtailment of facility programming and visitation), nor the public health risks faced by individuals like [Defendant] who have spent the entirety of the pandemic in a carcereal setting, nor the length of time over which these risks and deprivations would persist.

See also, United States v. Smith, 2022 U.S. Dist. LEXIS 65673 (S.D.N.Y. Apr. 8, 2022) (6 month reduction for same); United States v. Serrano, 2022 U.S. Dist. LEXIS

82612 (S.D.N.Y. May 6, 2022) (10 month reduction for same); <u>United States v. Batista</u>, 2022 U.S. Dist. LEXIS 100688 (S.D.N.Y. June 6, 2022) (20 month reduction for same); <u>United States v. Tucker</u>, 2021 U.S. Dist. LEXIS 158909 (S.D.N.Y. 2021) (12 month reduction because "the realities of incarceration have changed"); etc.

In addition, in anticipation that my motion would be adjudicated by the late Honorable Arthur Tarnow, I provided excerpts from his court's decisions determining that the increased punitive nature of incarceration during the pandemic is a factor warranting sentence reductions. This Court has also recognized this issue when granting sentence reductions. See, e.g., <u>United States v. Wardlow</u>, 2021 U.S. Dist. LEXIS 81161, at *11 (E.D. Mich. 2021) (T. G. Berg):

> The surrounding context of her incarceration thus far suggests that [Defendant] has served a sufficient punishment. At the time that the Court sentenced [Defendant]... it was with the expectation that she would serve that time under normal circumstances.
> [...]
> She has now served nearly 4 months... of her term under incarceration conditions harsher and more restrictive than during during normal times.

(granting compassioante release-- a net sentence reduction of 2 months). Such reasoning directly contradicts the government's assertion that the pandemic has affected all prisoners equally.

## 2. <u>My healthcare at FCI-Milan has been inadequate</u>

The original motion contains citations from courts who have found this to be a reason for sentence reduction, and provides a detailed description of how the medical care at FCI-Milan is generally inadequate and how it has been specifically inadequate in my case, including lack of recommended follow-up for my general health, lack of recommended specialty follow-up for my COVID-related eye disease, and lack of follow through for a concerning skin biopsy.

The government acknowledges this argument (Doc. 91, PageID.1192), but does

not dispute it in any manner.

### 3. The finalization of my state sentence after my federal sentencing has prolonged my federal incarceration by more than 24 months.

In the original motion, I outlined how my newer state sentence has prolonged my time in federal prison by more than 24 months. The resulting state detainer automatically disqualifies me from both halfway house placement (12 months) and 12 months of time off my sentence from First Step Act Time Credits. The government generally acknowledges this argument in its Response (Doc. 91, PageID.1192) but does not dispute it in any manner.

Since the original motion, another court in this circuit has held that the loss of opportunity to benefit from halfway house is a factor favoring reduction in sentence. United States v. Owens, 2022 U.S. Dist. LEXIS 88057, at *3-4 (N.D. Ohio May 16, 2022) held that the defendant's situational denial of halfway house constitutes "disparate treatment" that unfairly denies his of the housing, employment, and medical services, and other "support programs available to nearly all other federal inmates."

### 4. The state detainer precludes me from the drug treatment recommended by both sentencing courts

Again, the government acknowledges this argument in their Response (Doc. 91, PageID.1192), but fails to dispute it in any manner.

### 5. Being assaulted in prison is a circumstance supporting sentence reduction

The government does not even acknowledge this argument in their Response. As a lay-person, I can only imagine that there are liability reasons that might explain why the government failed to acknowledge this argument, and certainly there is probably little upside to arguing that being beaten unconscious is an "ordinary" or "anticipated" part of federal incarceration.

Maybe it's obvious, but the Supreme Court has plainly stated that "being violently assaulted in prison is not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825 (1994). And district courts have found that being physically assaulted is a circumstance supporting a sentence reduction. See, e.g., United States v. Oshinski, 2021 U.S. Dist. LEXIS 113917 (D. Nev. 2021) ("assaulted in an unprovoked attack by another inmate"); United States v. Macias, 2021 U.S. Dist. LEXIS 44153 (E.D. Cal. 2021) ("assaulted by two [gang] members"); United States v. Perez, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (broken jaw as a result of an assault).

## V. MY MEDICAL RISK FROM COVID-19 IS NOT AT ISSUE IN THIS PROCEEDING

### 1. The argument itself

The government uses numerous pages to argue that my health is not an extraordinary and compelling reason for compassionate release. In fact, this the only substantive opposition to my motion that they offer. The problem is that this argument was not made in the original motion because I agree. It's unclear whether the presence of this argument in the government's Response was simply inattentive copying and pasting or an intentional attempt to create a strawman. Regardless, this argument was already reasonably addressed by the Court in my first motion for sentence reduction and does not need to be readdressed by this Court. However, the government makes several inaccurate claims in its opposition argument that I feel I must reply to here so that this Court does not "factualize" them in its decision in a manner that may prejudice future proceedings...

### 2. My health risk from COVID-19

Initially, the CDC stated that congenital heart disease was a condition that conferred a high risk of severe complications and death from COVID-19. See, e.g.,

<u>United States v. Arena</u>, 2020 U.S. Dist. LEXIS 138217 (S.D.N.Y. 2020) ("[T]he Centers for Disease Control and Prevention has recently revised its analysis of comorbidities to specify that heart failure, coronary artery disease, <u>congenital heart disease</u>, cardiomyopathies, and pulmonary hypertension... are considered factors that result in an 'increased risk for severe illness from COVID-19'") (emphasis added). I was been born with congenital heart disease that required open heart surgery for a valve repair as a child, and still requires regular cardiology follow-up, this was the basis for my heightened anxiety (beyond "generalized concern") early in the pandemic. Imagine being locked in a prison cell for months with little access to reliable information about what's going on outside the walls while you know you have a high risk condition, and prisoners all around you are falling ill.

In their Response, the government incorrectly asserts that "[Hoeltzel] does not have any medical issues that place him at risk for complications from COVID-19 infection." Doc. 91, PageID.1192-93. While it is true that the CDC's updated list no longer includes congenital heart disease, it now includes overweight (BMU >25) and depression, both of which I do have. See, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

### 3. I am not "fully vaccinated"

Falling back on the outdated argument regarding the effects of vaccination, the government incorrectly asserts that I am "fully vaccinated and boosted." Doc. 91, PageID.1192. In fact, the CDC and FDA now both recommend that persons in carcereal settings and/or with high risk factors, receive TWO boosters. Because I have only received one and have recently been told by Health Services that a second booster is "not available," I am not fully vaccinated. In addition, a new vaccine has come out that specifically targets the prevailing Omicron variant of COVID-19. It's likely that this will alse be formally recommended, but there is no word if and when it will be available to prisoners.

## VI. A SENTENCE REDUCTION WILL NOT ENDANGER THE COMMUNITY

In the original §3582 motion, I presented my pre-sentencing conduct, post-sentencing conduct, and the BOP's own objective assessment of my recidivism risk (MINIMUM) to show that a sentence reduction would not endanger society because the Court is to consider "'the most up-to-date picture of the defendant's history and characteristics'" as of today, "not on the date of his offense or the date of his conviction." Concepcion, 597 U.S. \_\_\_, supra (quoting/citing Pepper v. United States, 562 U.S. 476, 492 (2011)).

The government fails to acknowledge any of these new facts and fails to acknowledge that my incarceration will continue because of my state detainer, despite a sentence reduction. The government also fails to acknowledge that even when I finally leave prison walls, I will be under triple supervision with continued liberty restrictions for the rest of my life. As expected, the government only considers who I was at the time of my conviction by repeating and recounting in detail only the criminal behavior that resulted in my incarceration.

Frankly, it was very difficult to read those pages of the government's Response. My conduct was certainly harmful, destructive, and deviant. Reading those details reignited the shame that has shaped my life since the events of my childhood. As sick to my stomach as reading my actions now makes me, reflecting on that past behavior also brings me a modicum of relief. After all of the treatment that I received prior to incarceration (possible primarily because of the decisions of the AUSA allowing me to complete residential sex offender treatment prior to arrest and of this Court to grant me release on bond), and after seeing so many other sex offenders in prison who "just don't get it" largely because they have never had the benefit of effective treatment, I no longer have any urge to minimize, rationalize, justify, or defend (let alone repeat) those behaviors. Even though it now seems like I am reading about someone else, that was all me. It only seems

like someone else because, at the time, I had compartmentalized myself from the reality of my behavior, from the harmful consequences of my behavior, and from my own value system that told me what I was doing was wrong.

It's commonly said that the first step in correcting problem behavior is admitting that you have a problem. I would modify that to say that the first step is <u>seeing</u> that you have a problem. Everyday, I observe other sex offenders who continue to maintain that they did not collect and view child pornography, or entice minors, for their own sexual gratification, but that it was some kind of misunderstanding, well-intended mistake, or even "planted evidence." Even those that will openly admit a problem with their sexual acting out will continue to insist that they should be able to watch movies like "Lolita" or collect pictures of scantily clad young celebrities, even in prison, because "it's not illegal." They do not <u>see</u> this pattern of thinking that enables their 'deviant cycle' and keeps those deviant neural pathways alive and well.

This is the same permissive pattern of thinking that preceded, and thus enabled, their (our/my) illegal sexual acting out behavior. They have yet to <u>see</u> or recognize that, let alone understand where it comes from or how to stop it. I have learned to avoid, recognize, and stop this kind of thinking, and I have operationalized these strategies in a Relapse Prevention Plan that stays with me in one form or another.

I <u>see</u> the horror of my past conduct and its consequences. I understand my own deviant cycle--emotions leading to thoughts, and thoughts leading to behaviors. I recognize that the emotions will come, and the thoughts may follow, but as long as I identify them, I can control my reaction to them and avoid harmful behavior. Negative emotions are inevitable, but I now have the tools in my "tool box" to cope with negative emotions in a constructive and healthy way. In a way, I am more free in prison than I ever was out in the world.

I will experience the remorse and sadness from my decisions for the rest of my

life. Bur I am not the victim here. I do not know if I will ever be able to fully make amends for all of the harm that I have caused both directly and indirectly, but I sure as hell am going to try. Being a present parent and positive role model to my 3 young children is priority number one, and I am never fulfilled unless I'm helping others. I plan to obtain a paralegal position to "make ends meet," but ultimately, I hope to use my skills as a physician and educator to become involved in providing sex offender counseling and treatment, perhaps even working at the same inpatient rehabilitation program that I credit with saving my life (Keystone Center, Philadelphia).

But I digress...

## VII. THE 3553(a) FACTORS WEIGH IN FAVOR OF SENTENCE REDUCTION

Again, the government provides no substantive applicable opposition to the arguments in my original motion.

First, they argue that "Hoeltzel's significant remaining sentence weighs against his release," pointing out that I have served less than 4 years. But this fails to acknowledge that I am <u>not</u> asking for immediate release. A 12-month reduction, for example, will result in another 3½ years in federal prison, and will allow for sex offender treatment sooner. The government's argument also fails to acknowledge that even with a sentence reduction, I will remain incarcerated in state prison after release from federal custody, and will be on triple supervision (state parole, federal supervised release, and sex offender registry) upon release from state custody.

Second, they raise a "history and characteristics" argument, again ignoring any "up-to-date" analysis of such, as addressed in detail above.

And third, they conclude that "Hoeltzel should complete his sentence for general deterrence and specific deterrence purposes." Doc 91, PageID.1202-03. It must be noted here that at sentencing, Judge Arthur Tarnow lamented at length that he was bound by the ten year mandatory minimum in this case, specifically commenting on how this allowed the government to choose the sentence based only upon a one-sided view of the defendant. It should also be noted that it was sentencing Judge Tarnow that wrote the conclusion in another case that reducing a defendant's sentence did not, in fact, undermine deterrence or respect for the law. See Doc. 88, pg 25-26 (citing <u>United States v. McConico</u>, 2020 U.S. Dist. LEXIS (E.D. Mich. 2020) ("Individuals contemplating criminal behavior could hardly be expected to rely on an unforeseen event on par with a pandemic to reduce that prison sentences they would risk by their actions... Respect for the law is promoted by demonstrating its humanity as much as its rigidity").

## CONCLUSION

The government argues that my health risks from COVID-19 are not an extraordinary and compelling reason warranting a sentence reduction, and I agree, especially because transfer from one prison to another would not lessen this risk.

The government argues that I should be denied "compassionate release," and I agree. I do not deserve to be released today, but I am not asking for immediate or compassionate release. I am asking for a <u>12 month sentence reduction</u>.

I have identified a combination of circumstances and facts, new since sentencing, that in combination reach the extraordinary and compelling standard and warrant a sentence reduction of 12 months. These include, (1) the increased punitive nature of incarceration due to pandemic lockdowns, (2) lack of rehabilitation programming due to pandemic restrictions, (3) lack of adequate medical care, (4) an inability to provide needed self-care, (5) a later state sentence/detainer causing a prolongation of my federal incarceration by more than 2 years and disqualifying me from the recommended drug program and usual halfway house benefits, (6) being the victim of a violent assault from another inmate, (7) a current lack of dangerousness, and (8) §3553(a) sentencing factors that do not weigh against a modest sentence reduction.

The government's Response misfired, failing to dispute any of these facts and circumstances, and failing to oppose the conclusion that the <u>combination of these factors</u> reaches the extraordinary and compelling standard, in aggregate. Without any reasoning or supporting legal authority, the government offers only the conclusory assertion that these circumstances do not warrant immediate compassioante release, but <u>they do not oppose a more modest sentence reduction</u>.

WHEREFORE, based upon the above and the previously submitted motion and exhibits which are attached herein by reference, I, Mark Hoeltzel, pro se defendant, respectfully respectfully request this Honorable Court to GRANT my motion for reduction in sentence, and ORDER that my federal sentence of incarceration be reduced by twelve (12) months, or by whatever term deemed appropriate by this Court.

Respectfully Submitted,

Date: 09/20/2022

Mark Hoeltzel
pro se

Reg. No. 56366-039
FCI Milan
P.O. Box 1000
Milan, Michigan 48160

---

### CERTIFICATE OF SERVICE

I, Mark Hoeltzel, declare under penalty of perjury and under the federal mailbox rule that I filed this Reply to the Government's Response by placing a true and correct copy in the Institutional Mail, pre-paid USPS First Class, on September 20, 2022, addressed to the following recipients:

Clerk of the Court
U.S. District Court
Eastern District of Micihigan
231 W. Lafayette Blvd.
Detroit, MI. 48226

Sara D. Woodward
Assistant U.S. Attorney
Eastern District of Michigan
211 W. Fort St., Suite 2001
Detroit, MI. 48226

x _____

